MARVIN EISENSTEIN and ANNETTE EISENSTEIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eisenstein v. Commissioner
Docket No. 4032-77.
United States Tax Court
T.C. Memo 1978-95; 1978 Tax Ct. Memo LEXIS 420; 37 T.C.M. (CCH) 441; T.C.M. (RIA) 780095; March 8, 1978, Filed Marvin Eisenstein, pro se. Anthony Bruce, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent has determined a deficiency of $690.85 in petitioners' Federal income taxes for 1975. Certain concessions having been made, the issue remaining is whether petitioners may deduct certain losses incurred on a condominium which they rented to petitionerhusband's parents. This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners Marvin and Annette Eisenstein filed their 1975 joint Federal income tax return with the Internal Revenue Service Center in Andover, Massachusetts. When they filed their petition, petitioners resided in Rochester, New York. Since January *423 of 1971, petitioners have owned 51 percent of Mate Realty, Inc. Mate is a corporation organized to profit from the rental and sale of appreciated real estate. In 1973, petitioners purchased individually a condominium as an investment. It is located in the Wellington high rise section of Century Village in West Palm Beach, Florida, and cost $24,269.58. Petitioners have rented the unfurnished condominium to petitioner-husband's parents. During 1975, they received from his parents a monthly rental of $150 ($1,800 per year). It has been stipulated that the fair rental value of an unfurnished condominium in that section of Century Village in 1975 was $305 per month ($3,660 per year). Petitioners' investment goal for the property was eventually to realize on resale a capital gain greater than the losses sustained by their failure to rent it at the fair rental value. As of August 1, 1977, the fair market value of condominiums in the Wellington high rise section of Century Village was in the upper $30,00 range. Finally, it has been stipulated that petitioners have not personally used their condominium, nor do they expect to use it as a vacation, recreation, or retirement home. *424 Petitioners reported the rental receipts and expenses on their 1975 Federal income tax return in the following manner: Gross Rental Receipts
$1,800.00
Less: Management Expenses
$ 998.81
Real Estate Taxes
364.14
Interest Expense
[1] 1,242.36 *425 Depreciation
1,213.45
Total Expenses and
Depreciation
3,818.76
Loss Reported
$2,018.76
It is not clear from petitioners' briefs whether they considered themselves to be personally involved in the trade or business of acquiring, managing, and selling rental real estate. In any event, there is nothing in the record that would support such an argument. In 1975, petitioners individually owned the Century Village condominium only, and they do not suggest that it was held as anything but an investment. Moreover, Mate Realty, Inc.'s, trade or business, whatever that may be, is not necessarily attributable to its principal shareholders. See, e.g., Shore v. Commissioner, 69 T.C.     (Feb. 13, 1978). Thus the deductions are clearly not allowable under section 162 (a). See also sections 165(c)(1) and 167(a)(1). Petitioners also may not take the deductions under section 212(1) or (2). That section would allow the deductions only if the transaction were entered into by petitioners primarily for profit. See section 1.212-1(c). See also sections 165(c)(2) and 167(a)(2). We do not think that petitioners' primary motive for acquiring and maintaining their condominium *426 was profit. The fact that petitioners rented to Marvin's parents for less than a fair rental value strongly suggests that the property was held, not primarily for profit, but for personal reasons. In Jasionowski v. Commissioner,66 T.C. 312 (1976), we disallowed losses incurred by a taxpayer who rented property to a friend, stating: We simply are unable to understand how we can impute a profit motive to petitioners when they voluntarily entered into a lease agreement under which, for a period of 7 consecutive years, they were bound to incur losses as distinguished from the usual "start-up" situation where early losses are anticipated but where effort and imagination could turn the venture toward profits rather quickly. [Id. at 322.] We recognize that petitioners hoped to realize on resale a capital gain greater than the losses sustained by their failure to rent at a fair rental value. But if the mere anticipation of eventually selling at a profit were in itself sufficient to establish that the property was held primarily for a profit, most individuals who purchased a home or condominium several years ago could make that claim. Yet we do not *427 allow those individuals to take such deductions, and Congress did not intend otherwise. See Jasionowski v. Commissioner,supra at 323. If petitioners' primary motive was profit, they would certainly have tried to maximize that profit by renting at the highest possible price. Cf. section 1.183-2(b)(1), Income Tax Regs. Yet there is nothing in the record indicating any attempt by petitioners to rent to their parents or others for the full fair rental value.Instead, they willingly and passively accepted a current cash loss for 1975 of $1,605.31 ($1,800 in rentals, less $2,605.31 in current expenses) with no apparent intention of ever deriving a current operating profit from the property. Again, although petitioners hoped to realize gain through appreciation in the property's market value, we think this is clearly outweighed by their personal reasons for holding the property. Compare section 1.183-2(b)(4), Income Tax Regs., with section 1.183-2(b)(9), Income Tax Regs. Although petitioners' reasons for acquiring the property are commendable, the losses realized because of it are nondeductible nevertheless. Finally, petitioners contend that even if we find them *428 not to be holding the property for profit, respondent improperly disallowed some deductions. Basically, respondent applied the rental income earned on the property first to amounts allowable as deductions without regard to profitability, viz. property taxes and interest expense. He then allowed the other deductions, which are allowable in full only if petitioners held the property primarily for profit, only to the extent that the rents exceeded the taxes and interest. This approach is explicitly required by section 183(b) and section 1.183-1(b)(1), Income Tax Regs. We find no error in respondent's determination. Decision will be entered for the respondent. Footnotes
1. This figure corrects an apparent typographical error in the stipulation of facts. According to the stipulation the interest expense for 1975 was $1,242.30, but the amount deducted on petitioners' 1975 return was $1,242.36. [de minimis, of course.] Respondent disallowed the loss, allowing deductions only to the extent of the rentals. Respondent first applied the deductions for interest expense and real estate taxes to the rental income from the property and then applied the excess rental income to other expenses of the property. Respondent contends that petitioners may only deduct those expenses tw the extent of the rental income because they did not hold the property primarily for profit. We agree. Generally, no deduction is allowed for expenses attributable to an activity not engaged in for a profit. Section 183(a). All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated.
[1] The term "activity not engaged in for a profit" means any activity other than one for which deductions are allowable under section 162 or 212. Section 183(c). Section 162 allows deductions for ordinary and necessary expenses paid or incurred in carrying on any trade or business. Section 162(a). Section 212(1) and (2) allows deductions for ordinary and necessary expenses paid or incurred for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. The determination of whether petitioner's activity was engaged in for a profit is to be made by reference to objective standards, taking into account all the facts and circumstances involved. Section 1.183-2(a), Income Tax Regs. And the burden of proof is on petitioner. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.↩